Chief Justice Robertson,
delivered the opinion of the court.
This is an ejectment on various demises, in the name of Gabriel Madison, and of his heirs and J. S. Bate and others,-against the tenants in possession, holding under the title of the heirs of Hugh Mercer.
The lessors of the plaintiff; claim under a patent to. Gabriel Madison; and defendants below (appellants here) derive their title from- the patent of Mercer’s heirs.
" Both are military rights, founded on the proclamation, of 1763.
The patent to. Madison, issued on the 23d of May,. 1785, and calls for “two thousand acres by survey, bearing date the 16th March, 1784, lying- and being in the county of Jefferson, on the Ohio, between the lands of Griffin and Mercer, and bounded as follows: Beginning at Griffin’s lower corner on the river bank, an ash and elm, south 83 degrees west, crossing several branches 327 poles, and continuing the meanders of the river, west 100 poles, in all 427 poles to two beeches and a sugar tree, corner to Mercer, and with his line south 48 degrees, east 540 poles, south 49 degrees, east 750 poles, in all, 1290 poles, to a white oak on the edge pf a hill, near Harrod’s creek, thence with Mercer’s end line, south 62 degrees, west 116 poles, to a beech and sugar tree in said line, thence south 38 degrees east, pressing Harrod’s creek 209 poles, to a Walnut, sugar *335 tree and buckeye, on the bank of the creek, of the south fork of Harrod’s creek, thence north 52 degrees east, crossing two branches 448 poles, to a white walnut, and sugar tree, north 38 degrees, west 275 poles, to a beech and elm in Griffin’s line, and with said line, south 30 degrees, west 246 poles, to Griffin’s corner, five ash trees on a line near Harrod’s creek, and with his line north 38 degrees, west, crossing a small creek and two branches, 1130 poles, to the beginning.
The patent to Mercer’s heirs, is dated, September 1st, 1780, and calls for “three thousand acres by survey, bearing date, the 4th June, 1774, lying- and being in the county of Kentucky, formerly Fincastle, and bounded as follows: Beginning at the three Beeches and sugar tree, on the bank of the Ohio river, about 16 or 17 miles from the falls of the Ohio, thence down the meanders of the river, binding on the same, 350 poles, to two beeches and some sugar tree saplings, thence south 56 degrees, east 1448 poles, to a sugar tree, buckeye and lynn, thence north 52 degrees, east 340 poles, to a white oak on the edge of a hill near Harrod’s creek, thence north 49 degrees, west 750 poles, thence north 48 degrees, west 540 poles, to the beginning.”
By reference to the plat which is appended to this opinion, the nature and extent of the controversy will be perceived and at once understood.
The black lines 3 3 3 3, represent Griffin’s claim.
DWMX, represent Mercer’s three thousand acres as claimed by the appellants; but the plaintiffs below (defendants here) insist that the true boundary of Mercer’s patent, is ascertained by the lines from D to W and to M and to T and thence (black line) to Á S and thence to D, and the latter figure is that which the jury gave to Mercer’s boundary by their verdict.
Madison’s two thousand acres, as claimed by the defendants here, are represented by 3 D A S T, 15, F H R10, G 3 3.
The appellants insist that the true bouudary of Madison is 3 JD, and black line to X, thence to I, thence to H and to R 10, and G and 3, to the beginning.
The land in contest, is included within the lines D X ATA S D, which contain 2070 acres.
*336 BBBB, represent the original survey of Mercer;
C C € C, represent Madison’s original plat, as filed in the Register’s office.
DWMTAASD, include three hundred acres.
3 I) X I H R 10, and around to the beginning, contained 3245, instead of two thousand acres.
Consequently, Mercer’s patent will cover five thousand seven hundred acres, instead of three thousand, if X ID, be his line.
And Madison’s patent will cover five thousand three hundred and fifteen acres, instead of two thousand, if his boundary can be extended to the line DASATF fi R, 10, &c.
Three of the corners of Mercer’s patent, to-wit: I) W M, are indisputably established, and are admitted. His lines are also, well defined by appropriate chops from the beginning, to T A. From T A to X, there is •no marked line, nor is either the line from X to D, or that from T A to S A and to X), marked with the exception of a few poles, from T A, towards A S and of a few poles from I) to A, no corner is found at X.
The corners, R 10, 3 G 3, are marked and admittted to be Madison’s corners. The line from H to R 10, is well marked, and so is that from R 10, to G. From 15 to F and from F to H, there are no marked lines, nor is there any marked corner at 1, or 15, or F.
On the trial, various instructions were given, and refused bj the court, which resulted almost necessarily, in the verdict of the jury, as rendered, which is as follows: “We of the jury, find the defendants guilty of the trespass and ejectment in the declaration mentioned for the land lying within the following bounds, to-wit: to commence at D on the plat, thence with the marked line, about 52 poles, to A, thence- to A S, thence to A T, thence 116 poles, to 15, thence to the end of the marked line, 40 poles from H, thence to H, thence to R 10, thence to 1 G, thence to 1 3, thence with Griffin’s line to his lower corner on the river, thence with the river to the beginning.”
The court having rendered judgment in favor of the plaintiffs below, according to this verdict, the defendants appealed.
*337 Many questions have been argued, which grow out of the demises and proof, and out of the instructions and refusals to instruct, some of which involve tant principles.
But as a full discussion of all these would enlarge this opinion to an inconvenient bulk, and as the decision which we shall give on the question of boundary, will dispose of the whole controversy, after we shall have established the boundaries of the conflicting claims, it will be unnecessary to notice further, any other points presented by the record-.
The counsel on both sides, seemed to suppose that the decision of the case must necessarily depend on the establishment of the fourth corner of Mercer; and consequently, the whole argument was directed to that point, and to subsidiary facts and illustrations.
Whatever may be the consequence to the appellees, of fixing the last corner of Mercer, it would seem proper, as Madison calls for Mercer’s line, that this line should be ascertained and fixed, before we proceed to give to Madison, his proper form and position.
A careful and minute examination of all the facts in all the aspects in which we have been able to consider them, has led our minds to the conclusion, that the third line of Mercer cannot be extended b'eyond T A, and that, therefore, his last corner, must be fixed at that spot. It seems to us, that no principle which has ever been established by this court, will be violated, by placing the corner at this point; and that, not only will former decisions be overturned, but the stubborn facts and manifest reason of the case must be disregarded by establishing the disputed corner at X. The following, are some of the most prominent reasons for this opinion':
1st. The line is well marked from M to T A; there is no vestige of a mark beyond that point. The lines-, from the beginning to M, are also, well marked, and the corners at 13, at W and M, are plainly marked. It is an inference, therefore, as legal as it is rational, that, without some other controlling fact to the contrary, Mercer’s third line was not extended farther than it was marked.
That elonga-will indude6 great surplus, will have no theTourt °if the boundary of the land be clear]"-estah-lished.
2d. The di stance called for in the patent, is 350 poles. The ac^ua^ ^ength of the marked line from M to T AT 380 poles, exceeding the length of the line in the patent 30 poles. This is as great an excess over the call in the patent, as the difference betwixt the actual distance of either of the other marked lines, and their patent lengths would authorize us to expect. Not only-do the marks cease, but the distance also, is run out at T A.
3d. By extending the line to X, it is elongated 426 poles; so as to make its whole length 806 poles, the distance called for, being only 350 poles, and the actual distance from M to T A, being only 380.
4th. The extension will cross Harrod’s creek. It is probable that, if the creek had been crossed by the original survey, the fact would have been noticed in the report of the surveyor, and in the patent; hut the only allusion which is made to the creek in either, is in the call for a corner near to it.
5th. The topography about T A, corresponds with the description, in the survey and patent, of the place where the corner was marked. It is proved that at T A, there is a white oak lying now on the ground nearly rotten, and so much decayed, that, if it had been marked asa corner, the traces of the chops would not now be visible, and that this tree once stood on the edge of a steep rocky hill, near, and in view of Harrod’s creek, and which is so precipitous towards the creek, as to render a descent to the base difficult, even on foot.
There is no proof that there is any hill at X; or that the creek can be seen from that point; or that there is any thing else there, corresponding with the call in the patent; or that at any other spot, excepting that at T A, the natural objects designated in the patent have been found.
6th. The elongation of the line will include a surplus of two thousand and seventy acres. This fact should have no influence in either a court of law or chancery, ^f the boundary were otherwise clearly established,, But under the peculiar circumstances of this case, it is entitled,to have a persuasive,if not adecisive effect; cs-as is enormous surplus will be produced almost exclusively by the extension of the line from T A to X; *339 the other lines being very little longer than the patent distances. This is a striking fact.
If establishiDg a corner at particular point give a figure to the survey obviously variant from that exhibited by the original plat; it is a strong reason for not establishing the corner at that point. Court will presume surveyor’s report tobe accurate and will accredit his official acts. Original plat is evidence of the most po tent kind.
7th. There is a marked line from T A, towards D 30 poles, as ancient as Mercer’s survey.
8th. By establishing X as the corner, a figure will be given to the survey, obviously and essentially variant from that exhibited in the plat of the original survey. The two plats are strikingly dissimilar. It is scarcely possible that, in a survey with only four corners, and the lines of which were all, except one, actually run and marked, so great a mistake could have occurred as that which must be imputed to the surveyor if the white oak corner be at or near X.
The official acts of the surveyor are to be accredited. The court must presume that he did his duty, and that his report is accurate, the more especially, as there is nothing which can tend to even a suspicion that there was any mistake or fraud. The original plat is not dnly admissible as evidence, but it is intrinsically one of the most potent facts which can be adduced; and hence it has been often admitted by this court as alwayseitherpreponderatingor alone conclusive.
By fixing the corner at T A, and closing the survey as the law and the facts prescribe, it will correspond, (with a very slight difference,) with the shape of the plat reported of the original survey, as will be presently shown.
The counsel for the appellants, urge the analogy between this case and that of Beckley vs. Bryan, and Ransdale, reported, in printed decisions by Sneed, page 107; and they insist, that, to find the white oak corner the patent courses should be reversed, and that where-ever a line from M, will strike one from D, pursuing the reversed courses in the patent, the law there fixes the corner. The cases are not analogous, and therefore, the argument,although it was ingenious and able, is not apposite.
If w have not been mistaken in the foregoing view, there is no necessity for resorting to that species of legal construction which the authority of the case in printed decisions and of many subsequent cases, prescribes.
When the facts designate the corner, there is no room for construction, nor necessity for the interposition ofthe court.
When the facts are insufficient the law interposes and directs the position of, the.corner.
If the facts designate the corner, there is no room for such an-expedient as the arbitrary construction of the court.. It is only when the corner does not exist, and the facts are insufficient to identify its position, that the law interposes and directs where it shall be. This is an act of necessity; and can be applied only where the necessity shall exist.
If, in this case, the corner at T A, were admitted, or if the facts were as direct and incontrovertible for establishing it, as they have been conceded to be as to other concerns, it would not be pretended that the rule in Beckley vs. Bryan, et. al. would apply, or could transpose the corner by making it yield to the experiment of inverting the course to find at what spot it will terminate. The lines and corners, as marked, are conclusive. The existence of a marked corner at T A, corresponding With that described in the patent, would only be one fact for identifying the corner. This is one species of evidence. It is not the only evidence, and sometimes is not the most satisfactory, The facts which concentrate on T A, and point to that spot as the place for the Corner, are, in our opinion, more cogent and less erring than would be the isolated circumstance of a white oak tree, being found (if such were the case) at X. It would be more probable that the tree was not marked for the corner, than that the host of facts which con-, verge at T A, shed a delusive light,
The corner is as clearly proved tp be at T A, as such a fact is susceptible of bein'g established. And although the evidence identifying it, does not possess so much directness and individuality, as that exhibited for the identification of the other corners; yet it is, when scruti-nised, even more conclusive. In relation to the other corners, we need only to suppose that one fact (the marked trees) might exsist, and that still the true corner which it tends to identify might be elsewhere. But, in relation to T A, many concurrent facts must be disregarded, before it can bp supposed that the corner was any where else than at T A; for example, the figure of the original survey; the age of the marked line, the distance, the peculiar hill, the creek; the marked line running off at right angles, and others which might Ire men fioned.
Correspondence between, °he annu-iations of the. timber is very Inden-tify the survey
^Tliere was a mistake, either in the patent course of the closing line, or in the distance called for in the third line, and in the plat of the survey. If the competition were between course and distance alone, the course should yield to the distance, because the conflict between them is not produced by a mistake in the course of any other line; see Preston’s heirs vs. Bowman, et. al. II Bibb, 494. This case reviews that of Beckley vs. Bryan, et. al. and applies its doctrines rationally, according to their principles; and it seems to us to be decisive of the question we are now considering. But it moreover shows that the original plat is.entitled to at least a preponderating influence. Consequently, the discrepancy between the original plat and that for which the counsel for the appellees, contend, ought to. be a sufficient answer to their arguments. But, combined with this, are all the other facts which have been stated, and the total destitution of any opposing circumstance, except the variation of some degrees in the course.
Without protracting the discussion, we are content to close it here; feeling well .assured, that, although the argument on this point might be enforced by many other considerations which we deem it useless to add, enough has been exhibited to establish the third corner at T A, Where we feel constrained to decide that it was and ¡shall be, and where the jury fixed it.
It remains, on this branch of the case, to determine how the survey shall be closed.
It is indisputably proved, that from T A, towards Jj, but on the course of north 45 west, instead of north 48 west, there is a marked line, 30 poles, corresponding with the date of Mercer’s survey. In 1824, some of the line trees being blocked, the annulations were fifty. The survey having been made in 1774, the lines had been marked precisely 50 years in 1824.
This exact correspondence, is not an infallible test. But after such a long lapse of time, it is believed that no single fact should have more effect. Although the annula, visible in the timber, are not unerring, they generally mark the time truly, to a skilful and experienced observer. Jacob Sodousky is, according to the tradition of the times, entitled to the credit of having dis *342 covered this] dumb evidence, provided by nature, for perpetuating the land marks of title. And time will develope the utility of the discovery, and do justice to the memory of the adventurous woodsman, whose sagacity made, and whoseSbenevolence revealed it.
Lines vey6whenSUr" marked, must govern, how-ftüerv?ifiant tent course.
We feel bound to consider this fragment of a line as a part of the true line. Therefore, it must be recog-nised as far as it goes; and so far the verdict is right.
The line when marked throughout, must govern, ho w-ever devious or variant from the course it may be. But we know of no decision by this or of any other court which requires that when only a section of the line is marked, the general course of that section shall, if vari-ant pom the patent course, be pursued where there is no marked line. Nor can we admit that such a rule would be consistent with truth or reason. We would suppose that, in such a case, after following the marked line to its end, the course called for in the patent, if it will lead to the corner, or if it will not, a course, as near that as will reach the corner, should be adopted. And such was the decision of this court, in the case of Wishart vs. Cosby, I Marsh. 382, and in that of Brown vs. Hobson, III Marsh. 382.
But,a] though there is no intermediate corner called for between T A and D, there are two calls for course, varying, the one from the other, one degree. There is an ancient marked line, about 50 poles long, from D towards T A; that is from D to A, on the annexed plat. The only proof to identify this as a part of the line of Mercer, is its course and its antiquity. There is no proof of its precise age; and therefore, it is not as well established as the line is from T A, in the direction to A S. There are other lines which are called ancient, but which, when scrutinised, are several years younger than Mercer’s survey; we are not disposed, therefore, to recognise the fragment from I) to A, as a part of Mercer’s line, especially as its course is erratic.
It will result, necessarily, that to ascertain and define Mercer’s boundary, a line must be run such a course from the termination of the line fromT A, ashy allowing a variation of three degrees (the variation shown in the other lines) and by changing the course one degree west, at the distance of 720 poles, (the length of the *343 first course in the patent from the white oak, after deducting 30 poles, the length of the marked line) will lead to the beginning at I); if the actual distance from T A to D, is that called form the patent; otherwise, if the actual distance exceed or fall short of the patent distance, the excess or deficit should be apportioned between the two lines.
When subse-» quent paten-tee calls for line of a former patent, he may go to it wherever it be, provided it is a marked line; notwithstanding a great surplus may be thus included, unless to do it, be so repugnant to his other calls, as to show that he was mistaken.
According to a calculation which we have made, the line will be north 36 west, 720 poles to N;' north 35 west, 540 poles. But, in this calculation, we may have made some mistake. We have mentioned it only-to exemplify the manner of ascertaing and defining the true line of boundary. The line when ascertained, as herein directed, will be the closing line of Mercer; and will exhibit a figure, the fac simile of the original plat of Mercer’s survey, with the exception of the indent at the end of the marked line from T Ato(S; and this slight deviation from the original form, is produced by a mistake in the course of the line, the end of which was hastily and carelessly marked.
It would seem to follow as a consequence, from the foregoing adjustment of Mercer’s claim, according to the arguments of counsel, that the appellees jmust recover all the land in controversy, which will not be embraced by the boundary prescribed to the appellants. And a supe ficial view of the case would tend to the same conclusion, as Madison called for Mercer’s line. Our investigation of the subject has led us, however, to a different result.
If Mercer’s closing line had been marked throughout its whole extent, it could not be denied, that the line so marked, would be also a line of Madison’s boundary. Because, calling for it, he adopted it as it was; and wherever it was, he would have a right to go, unless it •had been so remote, and so repugnant to other calls of Madison, as thereby to show that in calling for it, he was mistaken. The simple fact of a surplus, extending to even more than a duplication of Madison’s proper ■quantity, would not be sufficient to establish such a mistake. Notwithstanding such an. unusual surplus, Madison would have as much right to go to Mercer’s line if it had been marked, as he would have to extend his boundary to a natural barrier, if there had been such, and he had called for it as his boundary.
*344 But 'there is, in this respect, a palpable and essential 'difference betwixt an actual and an ideal line, or a ’marked and an open line. And as in the one case, Madison might be bounded by the marked line wheresoever it might be, (if he made no mistake) so in the other, he must be restricted to the’line as it appeared, to be, and as he believed it was when he called to adjoin it. In the first case, he would have a right to the marked line, because, being visible, he knew where it was, and therefore, intendeds, that as marked, it should be his boundary. In the last case, for the very same reason, wherever he supposed the invisible line to run, he must be bounded, because he intended when he made his survey to be, and therefore was bounded by it.
Is there any thing then in the record, which will show satisfactorily, where Madison supposed Mercer’s line was, when he called for it ? We think there is enough; and that it shows that he considered the courses and distances described in Mercer’s patent, as defining his true line.
1. It is undeniable, that Madison did not run the line from D. He either was not on the line, or if he were knew that it was not marked. In either event, the result will be the same, to-wit: that he knew Mercer’s line only by the courses and distances called for, and so adopted them. The fact that he calls for Mercer’s courses reversed; for his precise distances; and for his corner describing it, and the natural objects about it in the exact words, used by Mercer; would fortify this inference impregnably, if it needed any support.
2. Griffin’s line being admitted, and R 10, and I G being also admitted to be corners of Madison, T A could not be his corner, without disregarding other calls for courses and distances, and without abolishing some calls altogether. For example, the course from D must be greatly changed; and the distance from F to R 10 will be changed from 448 poles (the distance called for) to 920 poles. Or if the lines be run as the jury designated them, there will be courses and distances not only not described in the patent, but totally repugnant to. some of its calls; for example, from 1 5 to O instead of to F, and from O to H, making not only different courses, but different and moi’e lines and corners, not reconcilable with the patent.
*345 3. The corner at H is established to bé a corner of Madison, as clearly as any other corner on the plat. The trees correspond. They are marked as corners.The age of the marks correspond; they are on the branch of Harrod’s creek as described in the patent. There is a marked line from II to R 10 proved and claimed to be Madison’s line; the distance from H to R 10 corresponds with that in the patent, as well as other actual distances correspond with the calls for them; the line from H lo R 10, is 500 poles long-, the distance called for in the patent is 448. A marked line about 30 poles long from H in the direction to X is shown, and we are well satisfied from the proof of the annulations and other facts, that it is a part of Madison’s line from the second corner called for, after the termination of the line from the river, to the walnut, &c. at H. Besides, it improved that H was admitted Vo be Madison’s corner.
4. There is no marked line to F¿ No corner at F, nor is there any marked line from F to H.
5. The foregoing facts and illustrations show that it is almost impossible, that Madison ever went to T A. The establishments of the corner at II would, alone, bé almost conclusive. And this corner is consistent with the line I) X which is the line described by the courses called for by Madison; audit is iri’econcilable with any other line; totally so with any line from T A to D.
6. Making D X I H, &c. Madison’s boundary, he will have, as before stated, a surplus of twelve hundred and forty five acres; by extending his line to T A, he Will have a surplus of about three thousand acres. The distances called for in his patent will include ■bbout two thousand aci'es, his proper quantity. These facts, for the reasons before offered, are of themselves Vei-y persuasive in such a case as this.
7. But by inference to the original plat, it will be seen that the figure coiresponds with that which we .are endeavoring to establish, and is essentially unlike 'that which the jury presented. The original plat exhibits a figure narrower at the upper end ( as from X to Z Griffin’s corner) than at the opposite end on thé river; and shows a line from G to Z much longer than that from X to I.
*346 But the figure which will be exhibited, if T A be established as a corner for Madison, will be much wider at the end from, than that on the River; and will have a line from X to T A a great deal longer than that from G to Z. The two plats are so unlike, that it would seem to be impossible that the surveyor could have considered T A a corner of Madison. His plat corresponds with the figure which all the facts which wo have suggested, combine to identify as the land of Madison; and the correspondence is exact.
There is only one opposing circumstance. Madison calls to cross Harrod’s creek on the line from the white oak to the walnut, &c. atH. There is no difficulty in this, if we have not been mistaken in supposing that Madison did not run the line from D to X. He then assumed H as the corner from which he could run so as to make his two thousand acres, and marked a few poles towards X to show the course of the line, and to identify the corner at H. Hence, it -will be seen bj'-examining the course of the creek on the plat, that ho had good reason for supposing, that a line from X to R would cross it. And this accounts for his mistake.
As therefore,Madison intended that the courses called for in his patent from the river, should be his boun-' dary, and therefore, called for Mercer, because Mercer had called for those courses through mistake, and as ii. clearly appears, that the line D X 1 H R 10, &c. is the boundary designated in Madison’s original survey, and that he intended I) X to be his line, and will even by that line hold twelve hundred and forty five acres more than his two thousand, his boundary must be fixed accordingly. ■ It is evident, that he never saw the; piece of the line in Mercer’s closing line.
Wherefore, Madison’s claim must be restricted to the line I) I X I II, and around by Griffin’s line to the beginning.
It results, that the appellees had no right to a judgment for any part of the land in controversy; and therefore, the verdict and judgment in their favor are erroneous.
From the positions in which we have established both patents, the singular consequence also results, that *347 about two thousand acres of good land claimed to be covered by each, have never been appropriated by either, and yet belong to the commonwealth, unless they have been granted to some other person or persons than Gabriel Madison, or the heirs of Hugh Mercer. This is the legal consequence of the facts as the record in this case exhibits them.
Petition for a re-hearing.
Clay and Crittenden, for appellants; Denny, Mills and Thruston, for appellees.
Wherefore, the judgment of the circuit court is reversed, the verdict of the jury set aside, and the cause remanded for a new trial, consistently with this opinion. In which trial, if the facts which shall be proved shall be the same, and no other than those which appear in this record, the verdict should be for the defendants below, according to the principles of this opinion. But if there should be other proof, the verdict may be regulated by it so far as the additional proof, and the principles established by this opinion shall allow; this opinion is founded on the facts as they have been presented to us. Other and different facts might qualify it, and authorize, a correspondent modification of the verdict of the jury.